# In The United States Court of Appeals
# For The Federal Circuit

OLLNOVA TECHNOLOGIES, LTD.,

*Plaintiff / Appellant,*

– v. –

ECOBEE TECHNOLOGIES ULC D/B/A ECOBEE,

*Defendant / Appellee / Cross-Appellant.*

*On Appeals from the United States District Court
For the Eastern District of Texas in No. 2:22-cv-00072-JRG,
Honorable Rodney Gilstrap, Judge*

**NON-CONFIDENTIAL REPLY BRIEF FOR DEFENDANT/APPELLEE/
CROSS-APPELLANT ECOBEE TECHNOLOGIES ULC D/B/A ECOBEE**

Michael P. Sandonato
Manny J. Caixeiro
VENABLE, LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9900
MSandonato@venable.com
MJCaixeiro@venable.com

Megan S. Woodworth
Jason M. Dorsky
VENABLE, LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000
MSWoodworth@venable.com
JMDorsky@venable.com

Joshua Calabro
VENABLE, LLP
151 W. 42nd St., 49th Floor
New York, NY 10036
(212) 307-5500
JDCalabro@venable.com

*Counsel for Defendant / Appellee / Cross-Appellant ecobee*

May 5, 2025

# CERTIFICATE OF INTEREST

1. Provide the full names of all entities represented by undersigned counsel in this case.

   ecobee Technologies ULC d/b/a ecobee

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   None/Not Applicable

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   Generac Holdings Inc.
   Generac Acquisition Corp.
   Generac Power Systems, Inc.

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

   Jennifer Ainsworth (Wilson, Robertson & VanDeventer, P.C.)
   Matthew Milam (Roberts & Roberts)
   Steven Lubezny (Venable LLP)
   Eric Harmon (Venable LLP)
   Timothy Carroll (formerly Venable LLP)
   Daniel Apgar (formerly Venable LLP)
   Catherine Taylor (formerly Venable LLP)

5. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case.

   *Ollnova Technologies Ltd. v. Copeland Comfort Control LP et al.*, No. 4:22-cv-1387-JAR (E.D. Mo.)

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

   None/Not Applicable

May 5, 2025                          /s/ Manny J. Caixeiro_____
                                    Manny J. Caixeiro

                                    *Counsel for Defendant/Appellee/Cross-Appellant ecobee Technologies ULC*

# CERTIFICATE OF CONFIDENTIAL MATERIAL

Pursuant to Federal Circuit Rule 25.1(e)(2), the exact number of unique words (including numbers) sought to be marked confidential in this brief is: 6.

The material marked confidential on pages 22-23 of this brief describes highly confidential design details and source code information concerning the accused ecobee products that was designated attorneys' eyes only under the applicable protective order. The material marked confidential on pages 2 and 23-27 of this brief describes highly confidential terms of Ollnova's licensing agreements with a non-party that was designated attorneys' eyes only under the applicable protective order.

May 5, 2025

/s/ Manny J. Caixeiro
Manny J. Caixeiro

*Counsel for Defendant/Appellee/Cross-Appellant ecobee Technologies ULC*

# TABLE OF CONTENTS

Certificate of Interest ................................................................. i

Certificate of Confidential Material ........................................ iii

Table of Authorities ................................................................ vi

Table of Abbreviations........................................................... ix

Introduction .............................................................................1

Argument..................................................................................3

I.     The Jury Instructions and Verdict Form on Eligibility Were Erroneous and Prejudical ............................................................3

II.    Ollnova's Response Confirms That the '495 Patent Asserted Claims are Not Patent Eligible...............................................9

III.   The '371 and '887 Patent Asserted Claims Are Not Patent Eligible ...........13

       A.    The Asserted Claims Are Directed to Abstract Ideas ........................13

       B.    The Asserted Claims Do Not Contain an Inventive Concept .............18

IV.    The '371 Patent Asserted Claims Require Repeatedly Communicating a COV Update, and Ollnova Failed to Show the Accused Products Operate as Claimed......................................20

       A.    Ollnova Ignores the Claims' Plain Language ....................................20

       B.    Ollnova Mischaracterizes the Record Evidence ................................21

V.     The District Court Erred in Admitting Unreliable Damages Opinions and Finding They Provided Sufficient Evidence to Support the Jury's Award................................................23

       A.    Mr. Bergman's Equal Value Assumption Should Have Been Excluded and Was Insufficient to Support Damages..........................23

       B.    Mr. Bergman's 1000x Market Share Multiplier Should Have Been Excluded and Did Not Provide Sufficient Evidence to Support Damages .................................................26

       C.    Dr. Madisetti's Testimony on Marking Should Have Been Excluded and Did Not Provide Sufficient Evidence to Support Damages ............................................28

VI.    The District Court Erroneously Merged Multiple Infringement Questions Into a Single Infringement Question on the Verdict Form..........29

Conclusion ...................................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)..................................................................6, 9

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ............................................ 6, 12

*Apple Inc. v. Wi-LAN Inc.*,
    25 F.4th 960 (Fed. Cir. 2022) ......................................................25

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) ........................................... 28, 29

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020) ...................................................25

*Bucyrus-Erie Co. v. Gen. Prod. Corp.*,
    643 F.2d 413 (6th Cir. 1981) .........................................................4

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020) ...................................................16

*Contour Holding LLC v. GoPro, Inc.*,
    113 F.4th 1373 (Fed. Cir. 2024) ...................................................7

*Cooperative Entertainment, Inc. v. Kollective Tech., Inc.*,
    50 F.4th 127 (Fed. Cir. 2022) .....................................................13

*CosmoKey Sols. GMBH & Co. KG v. Duo Sec. LLC*,
    15 F.4th 1091 (Fed. Cir. 2021) .....................................................6

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021) ............................................ 13, 16

*DDR Holdings, LLC v. Hotels.com L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) .....................................................6

*Elec. Comm'n Techs., LLC v. Shopperschoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020) ...................................................18

*Elec. Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2018) ................................. 10, 11, 14, 18

*Geoscope Techs. Pte. Ltd. v. Google LLC*,
    No. 2024-1003, 2025 WL 1276235 (Fed. Cir. May 2, 2025) .......................15

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ............................................................ 24, 27

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ...................................................17

*In re Varma v. IBM Corp.*,
    816 F.3d 1352 (Fed. Cir. 2016) ...................................................21

*Infernal Tech., LLC v. Sony Interactive Ent. LLC*,
    No. 22-1647, 2024 WL 390881 (Fed. Cir. Feb. 2, 2024) ..............................7

*Kaufman v. Microsoft Corp.*,
    34 F.4th 1360 (Fed. Cir. 2022) ...................................................20

*MySpace, Inc. v. GraphOn Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012) ...................................................7

*Network-1 Techs., Inc. v. Hewlett-Packard Co.*,
    981 F.3d 1015 (Fed. Cir. 2020) ...................................................31

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) ...................................................29

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017) ...................................................25

*Repifi Vendor Log. v. IntelliCentrics, Inc.*,
    No. 21-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) ............................14

*Salazar v. AT&T Mobility LLC*,
    64 F.4th 1311 (Fed. Cir. 2023) ...................................................21

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ...................................................19

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ...................................................12

*SEB S.A. v. Montgomery Ward & Co.*,
    594 F.3d 1360 (Fed. Cir. 2010) ...................................................31

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ...................................................19

*Structural Rubber Prods. Co. v. Park Rubber Co.*,
    749 F.2d 707 (Fed. Cir. 1984) ...................................................30

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ...................................................19

*Thales Visionix Inc. v. United States*,
 850 F.3d 1343 (Fed. Cir. 2017) ....................................................17

*Trading Techs. Int'l, Inc. v. IBG LLC*,
 921 F.3d 1378 (Fed. Cir. 2019) ....................................................3

*Trinity Info Media, LLC v. Covalent, Inc.*,
 72 F.4th 1355 (Fed. Cir. 2023) ....................................................15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
 874 F.3d 1329 (Fed. Cir. 2017) ........................................... 11, 19

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
 957 F.3d 1303 (Fed. Cir. 2020) ....................................................11

*Univ. of Fla. Res. Found., Inc. v. Gen. Elec. Co.*,
 916 F.3d 1363 (Fed. Cir 2019) ....................................................14

*Vectura Ltd. v. GlaxoSmithKline LLC*,
 981 F.3d 1030 (Fed. Cir. 2020) ....................................................24

*Weinar v. Rollform Inc.*,
 744 F.2d 797 (Fed. Cir. 1984) ....................................................9

*Yu v. Apple Inc.*,
 1 F.4th 1040 (Fed. Cir. 2021) ....................................................9

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| Appx#### | Joint Appendix Page #### |
| ecobee | Defendant-Appellant ecobee Technologies ULC d/b/a ecobee |
| Ollnova | Plaintiff-Appellee Ollnova Technologies Ltd. |
| District Court | U.S. District Court for the Eastern District of Texas |
| Siemens | Siemens Industry, Inc. |
| '495 patent | U.S. Patent No. 7,860,495 |
| '371 patent | U.S. Patent No. 8,264,371 |
| '887 patent | U.S. Patent No. 7,746,887 |
| '282 patent | U.S. Patent No. 8,224,282 |
| '495 patent Asserted Claims | Claims 1 and 2 of the '495 patent |
| '371 patent Asserted Claims | Claims 1, 5 and 17 of the '371 patent |
| '887 patent Asserted Claims | Claims 1, 11, 12 and 20 of the '887 patent |
| '282 patent Asserted Claims | Claims 1, 3, 6 and 21 of the '282 patent |
| Asserted Patents or Patents-in-Suit | '495 patent, '371 patent, '887 patent, and '282 patent, collectively |
| Asserted Claims | '495 patent Asserted Claims, '371 patent Asserted Claims, '887 patent Asserted Claims, and '282 patent Asserted Claims, collectively |
| X:Y-Z | Column X, Lines Y-Z |
| POSITA | Person of ordinary skill in the art |
| E.Br. | Confidential Principal Brief for Defendant/Appellee/Cross-Appellant ecobee Technologies ULC d/b/a ecobee [Dkt. 21] |
| Oll.Br. | Appellant Ollnova Technologies Ltd.'s Confidential Response and Reply Brief [Dkt. 31] |
| S.A.P.Br. | Brief of *Amici Curiae* SAP Am. Inc., *et al.* [Dkt. 30] |

# **INTRODUCTION**[1]

The judgment below was predicated on multiple errors, any one of which provides an independent reason for this Court to reverse. Nothing said by Ollnova justifies those errors or should prevent this Court from reversing and either entering judgment in ecobee's favor or (at minimum) remanding for retrial.

Ollnova does not dispute that the '495 patent claims are directed to an abstract idea. Nor does it dispute that the jury was prevented from learning what the abstract idea was. The jury thus was unable to perform the required *Alice* Step Two analysis of determining whether the patent claims include an inventive concept beyond that abstract idea. Ollnova's position that courts may withhold the abstract idea from a jury conflicts with established law, which requires that Step Two take into account the abstract idea's scope and nature. This error was not harmless, as the verdict form and jury instruction left the jury free to find an inventive concept in the very idea the District Court found abstract.

Ollnova offers no compelling rebuttal to ecobee's demonstration that the '495, '887 and '371 patents are ineligible—a determination this Court can and should make on appeal. Ollnova repeatedly asserts the conclusory mantra that these patents provide a "technical solution to a technical problem," but for all three that argument is belied by the claim language. Each patent involves the use of conventional

---

[1] All bold-italics emphasis added unless otherwise indicated.

1

components, arranged and operating in a conventional manner, and Ollnova cannot point to any improvement to technology.

Trying to salvage eligibility of the '371 patent, Ollnova asserts that the patent is about repeating communication attempts. But when it comes to infringement, Ollnova about faces and argues that repeating the same message is not required. This fundamental inconsistency exposes the weakness of both positions, and this Court should find the '371 patent to be both ineligible and not infringed.

The District Court erred by allowing expert testimony that damages should be exponentially more than the amount paid by Ollnova's licensee, based on unsupported assumptions regarding relative sales and that the Asserted Patents were equal in value to ▮ other patents in a portfolio license. Ollnova responds that the Asserted Patents may be ***more*** valuable than the others, but its position lacks record support. Ollnova also fails to justify its expert's reliance on a single document to support his relative sales assumption, when he admitted that document was flawed and he had no "evidence whatsoever" to support his extrapolation therefrom. Rule 702 requires more.

On marking, Ollnova seeks to impose novel burdens on a defendant to identify patent-practicing components and functionality, while ignoring that the relevant APOGEE system was expressly disclosed as an embodiment in the applicable Asserted Patents.

Finally, Ollnova never addresses ecobee's argument that presenting the jury with a single infringement question denied it of its right to a separate adjudication of each counterclaim for a declaration of non-infringement on each patent. This failure alone mandates vacating the judgment.

## ARGUMENT

## I.   THE JURY INSTRUCTIONS AND VERDICT FORM ON ELIGIBILITY WERE ERRONEOUS AND PREJUDICAL

Ollnova tacitly concedes that "[t]he abstract idea itself cannot supply the inventive concept." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (citation omitted). In fact, Ollnova's brief does not address that principle at all. Instead, Ollnova contends that a factfinder can evaluate whether a claim contains an inventive concept at *Alice* Step Two in isolation, without considering the existence, nature or scope of the abstract idea identified at *Alice* Step One. As ecobee and the amici established, Ollnova's argument contradicts well-established law. *See* E.Br., 24-26; S.A.P.Br., 4-7. The District Court's refusal to identify the abstract idea and instruct the jury to analyze whether there was "significantly more" than that abstract idea constitutes reversible error.

Ollnova's argument that the District Court's instructions "correctly stated" the law concerning whether the limitations "involve only technology which a [POSITA] would have considered to be well-understood, routine, and conventional" misses the point. Oll.Br., 36-37. The issue is not whether what the District Court said was

correct, but rather, whether the District Court omitted information that the jury needed to perform the proper analysis. Specifically, the District Court refused to inform the jury: (1) that the claims were directed to an abstract idea, (2) what the abstract idea was, and (3) that the abstract idea cannot provide the inventive concept.

Ollnova's suggestion that the District Court can ignore the required legal framework because (as Ollnova incorrectly contends) neither expert relied on the abstract idea fails at multiple levels. Oll.Br., 37-38. First, Ollnova mischaracterizes the record, as its expert Dr. Madisetti did rely on the abstract idea, opining that the patent's unconventional feature was using two networks to "control" building components. *See* Appx1969-1970, 1073:23-1074:15. That allegedly unconventional feature was in fact the abstract idea. *See* E.Br., Argument, Section III. Ollnova contends that Dr. Madisetti's testimony was limited to "the implementation of two wireless networks that were free of communication with each other" (Oll.Br., 37-38), but that description tracks the abstract idea: "controlling generic 'components' using information … from two separate networks.'" Appx132.

Second, regardless of how Ollnova characterizes the record, the District Court committed an error of law that taints the verdict. "The purpose of jury instructions is to inform the jury on the law and to provide proper guidance and assistance in reaching its verdict." *Bucyrus-Erie Co. v. Gen. Prod. Corp.*, 643 F.2d 413, 418 (6th Cir. 1981). Whether the experts identified the abstract idea as "abstract" in their

testimony is unimportant because legal error was committed in the instructions when the jury was given room to find the inventive concept in the undisputedly abstract idea.

The District Court's instruction that the jury must "consider all of the evidence" (Oll.Br., 38) did not cure this legal error. The District Court improperly withheld its conclusion—previously decided as a matter of law—that the claims were directed to an abstract idea. The District Court compounded this error by implying that it had not yet decided that the claim was directed to an abstract idea as a matter of law, giving the jury the false impression that it was free to find Step Two satisfied by anything at all in the patent's claims. Appx2139, 1240:4-15.

Ollnova contends that District Courts need not analyze *Alice* Step One first, arguing that sequence "conflicts with this Court's own practice of focusing its eligibility analysis on Step Two without first resolving Step One." Oll.Br., 39-40. But that sequence must be followed, as it comes directly from the Supreme Court, which held that courts "must ***first*** determine whether the claims at issue are directed to a patent-ineligible concept," and only "***[i]f so***," determine, at Step Two, "whether the ***additional*** elements [of the claim] 'transform the nature of the claim' into a patent-eligible application.'" *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18

(2014) (explaining Step Two determines whether the patent "amounts to **significantly more** than a patent upon the [ineligible concept] itself").[2]

As to what Ollnova calls "this Court's own practice" of starting with Step Two, its cited cases show the opposite—i.e., that Step One comes first. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1302-04 (Fed. Cir. 2016) (assuming claim was directed to the abstract idea before analyzing Step Two); *CosmoKey Sols. GMBH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1097-99 (Fed. Cir. 2021) (accepting district court's abstract idea before finding the claims satisfied Step Two); *DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245, 1257-59 (Fed. Cir. 2014) (addressing different characterizations of the abstract idea before addressing Step Two). *DDR Holdings* makes clear that courts must "begin [the] § 101 analysis at Mayo/Alice step one: determining whether … [claims] are 'directed to' a patent-ineligible abstract idea." 773 F.3d at 1257. Ollnova fails to cite any case where this Court skipped Step One and only considered eligibility at Step Two.

Ollnova's other cited cases are inapposite. *MySpace, Inc. v. GraphOn Corp.* could not address the ordering of *Alice* steps as the decision predated *Alice's* framework by two years, and instead addressed whether eligibility must be analyzed before invalidity under Sections 102 and 103. 672 F.3d 1250, 1258-62 (Fed. Cir.

---

[2] Ollnova's meager response to the two-step infringement analogy is similarly premised on there being "no requirement" that Step One occur before Step Two. Oll.Br., 40 n.4.

2012). Ollnova also quotes *Infernal Tech., LLC v. Sony Interactive Ent. LLC* (Oll.Br., 39-40), but the cited language is a background description of how Step Two was addressed in a different underlying trial, which was neither challenged on appeal nor analyzed by this Court in the cited decision. No. 22-1647, 2024 WL 390881, at *9-10 (Fed. Cir. Feb. 2, 2024). By contrast, in *Contour Holding LLC v. GoPro, Inc.*, this Court explained that under *Alice*, Step One is considered first, where "the inquiry continues to *Alice* step two" only if the claims are directed to an ineligible concept— otherwise, "the *Alice* inquiry ends." 113 F.4th 1373, 1378-79 (Fed. Cir. 2024).

Ollnova repeats the District Court's erroneous understanding that ecobee asked for "certain claim elements" to be "disregarded," and limiting others for consideration. Oll.Br., 41. Not so, and Ollnova fails to identify language in ecobee's proffered instruction that would result in improper claim dissection. ecobee's instruction adhered to this Court's precedent, and only sought to inform the jury of the abstract idea so that it could look for something more in its deliberation. Appx2104-2106, 1205:6-1207:5

Ollnova's assertion that any error was "harmless" is premised on the circular argument that ecobee was obligated to re-argue Step One to the jury at trial. Oll.Br., 42-43. This argument fails for several reasons.

First, the District Court already determined prior to trial, in response to ecobee's motion, that the claims were directed to an abstract idea. Appx132. ecobee

was barred by the District Court's Standing Order on MILs from presenting any testimony at trial in that regard. Appx8601-8604 (Court MIL No. 1) (barring testimony "regarding pretrial proceedings or issues" including "dispositive motion practice"). Thus, the MIL Order prevented ecobee, for example, from cross-examining Dr. Madisetti on the ground that his testimony conflicted with the Court's order concerning abstractness or from presenting the District Court's conclusion through its own invalidity expert. Nor is there any requirement that ecobee had to do so to demonstrate harm. The District Court permitted the jury to believe the inventive concept could be the abstract idea, and this Court cannot know if the jury did or did not do so when analyzing Step Two. This instructional error is analogous to allowing a jury to determine infringement without first informing the jury of a key claim construction, which necessitates reversal. *See* E.Br., 27-28. This is an error of law, not an evidentiary issue.

Second, Ollnova incorrectly suggests that there can be no harm because ***ecobee's*** expert addressed the additional claim elements beyond the abstract idea, and therefore the abstract idea was allegedly "baked into" ecobee's presentation. Oll.Br., 42-43. That ecobee's expert properly focused his testimony does not negate the need for a proper instruction. The jury had no reason or ability to consider the abstract idea, as the Court said that issue was "not something you will have to decide in this case." Appx2139, 1240:4-10.

Third, contrary to Ollnova's characterizations (Oll.Br., 43), Dr. Madisetti did rely on the concept of using information from two separate "networks" for purposes of "control," which is encompassed by the abstract idea. *See* E.Br., 31-38. Due to the instructional error, the jury had no way of assessing this testimony or properly looking for something "significantly more." *Alice*, 573 U.S. at 217-18. This was particularly harmful here, where Dr. Madisetti relied on "[t]he claimed configuration" of recited networks (i.e., use of one without the other), which "does not add sufficient substance to the underlying abstract idea." *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021).

Ollnova's cited cases do not suggest a lack of harm and fail to demonstrate that the "same verdict would ***necessarily*** be reached absent error." Oll.Br., 42 (citing *Weinar v. Rollform Inc.*, 744 F.2d 797, 808 (Fed. Cir. 1984)). A properly informed jury would have recognized that Dr. Madisetti's testimony relied on that idea itself, which would have—or at the very least, ***could have***—led to a different result.

## II.   OLLNOVA'S RESPONSE CONFIRMS THAT THE '495 PATENT ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE

Ollnova makes the conclusory argument that the '495 patent Asserted Claims provide "a technical solution to a technical problem" and, therefore, satisfy Step Two. Oll.Br., 30-31. However, Ollnova's argument is belied by the claims themselves, which merely recite an abstract idea for using two well-known,

conventional networks. Nothing in the claim language describes a "technical solution" that improves any particular technology.

There is no dispute that all components recited in the claims are conventional and arranged in a conventional manner. *See* Oll.Br., 30-35. Ollnova instead argues that eligibility can be found in "the third limitation" of claim 1, which describes "two modes of operation"—i.e., one mode where information from only one network is used for control, and a second mode where information from both networks is used for control. *Id.*, 31. But, this expresses the abstract idea: "controlling generic 'components' using information from two separate sources (*i.e.*, information from two separate networks)." Appx132. Contrary to Ollnova's arguments, the claims are no less abstract merely because they contemplate a mode that uses only one source of information. *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-55 (Fed. Cir. 2018) ("[M]erely selecting information, by content or source … does nothing significant to differentiate a process from … the information-based category of abstract ideas.").

Ollnova's other attempts to define an inventive concept fail because they lack support in the claim. For example, Ollnova references the patent's discussion of possible ways the disclosed architecture could be implemented, such as addressing "communication failures" or implementing "local control." Oll.Br., 31-33. However, the Asserted Claims require neither, and the claim language is so broad as

to preempt any selective use of conventional networks for generic "control." *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017) ("the *claim*—as opposed to something purportedly described in the specification" must contain the inventive concept).

Ollnova next suggests the inventive concept is using two wireless networks in "building automation systems." Oll.Br., 32 n.3. But "automation" and "system" appear only in the preamble, which Ollnova never argued was limiting. Regardless, the environment referenced by the claim preamble cannot confer eligibility. *Elec. Power Group*, 830 F.3d at 1354 ("limiting the claims to the particular technological environment ... is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core.").

Ollnova misconstrues *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, to argue that claims need not recite the alleged technological improvement at Step Two. Oll.Br., 34. *Uniloc*, however, unambiguously requires that claims "recite [the] specific improvement." 957 F.3d 1303, 1309 (Fed. Cir. 2020). What is unnecessary, under *Uniloc*, is for the claims to expressly state the advantages of that improvement. *Id.*

Ollnova asserts that "the district court explained" that ecobee's prior art references did not disclose control "free of communications" with a second network. Oll.Br., 33. In the cited passage, however, the District Court merely noted that Ollnova's expert had offered that opinion. Appx59 ("Dr. Madisetti opined …").

Although irrelevant, Ollnova is also wrong that Dr. Madisetti's testimony was "unrebutted." Oll.Br., 32. ecobee's expert, Dr. Martens, presented evidence and testimony that the concept of two modes of control using different conventional networks in the third ("last") limitation was well-known at the time. *See* Appx1817-19, 921:6-923:23 (discussing existing control systems implementing different networks using two modes of control). While Ollnova urges the jury was allowed to credit Dr. Madisetti's opinion, his opinion pointed only to abstract idea itself; even if that idea were allegedly novel, it cannot confer eligibility. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("Nor is it enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art").

Ollnova next claims (without authority) that eligibility is supported because ecobee's accused product was released after the patent issued. Oll.Br., 34. Of course, accused products have no relevance to whether claims recite eligible subject matter. Ollnova's logic would mean an ineligible claim may become eligible by asserting it against a later-in-time, commercial product. That is not the law.

Finally, Ollnova's analogies to precedent fail. The claims in *Amdocs* specifically "enhanced" data through computer code and a distributed architecture, which provided unconventional operation that improved the computer itself. 841 F.3d at 1299-1302. Here, there is no data enhancement or unconventional distributed

architecture; the claims simply recite selectively using non-specific information from conventional networks to implement generic "control." Similarly, in *Cooperative Entertainment, Inc. v. Kollective Tech., Inc.*, the claims recited an "allegedly new claimed P2P network." 50 F.4th 127, 131-33 (Fed. Cir. 2022). By contrast, the networks and protocols in the '495 patents are standard "wifi" and "Bluetooth," indisputably without any customization of or improvement upon the networks themselves. *See* Appx158, 5:8-30; Appx156, 2:3-6.

## III. THE '371 AND '887 PATENT ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE

### A. The Asserted Claims Are Directed to Abstract Ideas

Ollnova does not meaningfully dispute that the '371 and '887 patent Asserted Claims are directed to the concept of communicating change information using well-known and conventional components. Instead, Ollnova repeats its conclusory mantra that the patents survive Step One because they provide a "technological solution to a technological problem." Oll.Br., 16-18, 24-27. However, nothing in the claims provides any technological improvement to any particular technology, as confirmed by the undisputedly conventional nature of the recited technology. *See, e.g.*, *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378-79 (Fed. Cir. 2021) (no "technological solution" where the claims did not "improve[] the use of computers as a tool by reciting a new technological way" to operate, and instead "appl[ied] an abstract idea using conventional techniques specified in functional terms"); *Univ. of*

*Fla. Res. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367-68 (Fed. Cir 2019) (no "technological solution" where claims did not recite any "specific improvement to the way computers operate," and instead described operations in "*functional* terms"); *Repifi Vendor Log. v. IntelliCentrics, Inc.*, No. 21-1906, 2022 WL 794981, at *3 (Fed. Cir. Mar. 15, 2022) (no "technological solution" where claims applied "existing technology" to carry out an automated process). That the patents' abstract ideas are claimed in the context of a particular technological environment does not render them patentable, technological solutions. *See Elec. Power Group*, 830 F.3d at 1354.

Ollnova asserts that the '887 patent addressed "technological problems" relating to "available bandwidth," "noisy" networks, and "power" associated with continuous monitoring. Oll.Br., 16-17. But the patent does not provide a technological solution to any of these issues. It merely directs the reader to "selectively transmit data" based on an unspecified threshold (a "predetermined range") using pre-existing technology. *See id.*, 17-18. The claims do not describe any improved components or unconventional arrangement, nor do they recite a specific technique for improving the subject device. Ollnova implies that routine activities like "polling" for conditions and "transmit[ting]" data during associated intervals bear on eligibility (*id.*, 17, 20), but the patent itself recognizes that these common operations were already well-known. *See* Appx143, 1:9-33 (discussing

existing "components" that "detect events, sense conditions" and "communicate[]" related information"). The only concept the patent claims as the invention is the idea of selectively transmitting information based on a threshold, something that even Ollnova recognizes "could theoretically be carried out mentally." Oll.Br., 21. Such a concept cannot confer eligibility. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1365 (Fed. Cir. 2023) (use of a "predetermined threshold" "merely reflects the kind of data analysis that the abstract idea of matching necessarily includes").

Ollnova's arguments for the '371 patent's eligibility fail for the same reasons. Ollnova argues that the patent addresses the problems of "'configuring' hardware devices," and "dealing with 'bandwidth limitations'" and "data loss" due to communication failures through its use of "specific types of messages"—i.e., "change-of-value messages." Oll.Br., 24. However, a "change-of-value" message is not a technologically new messaging technique, or new data structure. Rather, it is any message that "indicate[s] whether … detected values, received values, parameters, or measurements have changed or altered beyond a pre-defined reporting limit." Appx188, 6:10-17, 6:44-49; Appx116. Non-specific information about a change, communicated using pre-existing and conventional means, cannot confer eligibility. *See Geoscope Techs. Pte. Ltd. v. Google LLC*, No. 2024-1003, 2025 WL 1276235, at *3 (Fed. Cir. May 2, 2025) ("The fact that [claims] relate to a

particular type of information … does not remove them from the realm of the abstract."). That the claim "aggregate[s]" messages into an update, and "communicate[s]" change information, does not provide a technological solution, as those are routine and conventional steps that long pre-date the patent. *See* E.Br., 40, 42-43 (collecting cases).

Tellingly, Ollnova resorts to improperly injecting concepts from the specification into the claims by arguing that "[t]he claim recites" the concept of additional data aggregation and storage when "communication is not possible." Oll.Br., 26 (citing specification, Appx189, 8:10-25). But that concept is not in the claims. Regardless, aggregating information before sending it is abstract.

Ollnova's analogies to eligible claims fail. *CardioNet, LLC v. InfoBionic, Inc.* involved an improved cardiac monitoring device that combined different types of detectors and associated logic to "achieve speedier, more accurate, and clinically significant detection"—i.e., it improved the device itself. 955 F.3d 1358, 1368-70 (Fed. Cir. 2020). There is no suggestion in *CardioNet* that the device contained only conventional components arranged in a conventional manner. By contrast, the '887 and '371 patents "merely computerize pre-existing techniques" by applying the concept of selective communication of change information to conventional, unmodified devices. *See cxLoyalty*, 986 F.3d at 1378-79 (distinguishing *CardioNet* from an ineligible concept).

*Thales Visionix Inc. v. United States* involved an "unconventional configuration" of inertial sensors to reduce errors in measuring the relative position and orientation of a moving object, which improved the accuracy of the sensors themselves to "measure the tracked object." 850 F.3d 1343, 1345, 1349 (Fed. Cir. 2017). Here, Ollnova does not (and cannot) identify any "unconventional configuration" of components in the claims nor a claimed improvement to the technology (i.e., the recited devices, processors, memories or the like). The claims recite simply communicating information about a change, which is described in "purely functional terms" using existing technology. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).

Ollnova ridicules ecobee's demonstration that the claims could be performed without the recited technology, but it fails to identify substantive flaws in ecobee's analogue. For the '887 patent, Ollnova does not dispute that the purported invention could be carried out by residents in an apartment (E.Br., 40-41), and seemingly acknowledges the claimed process "could be performed mentally." Oll.Br., 21. Instead, it repeats the conclusory argument that the claimed communication threshold "make[s] the device itself better" (*id.*)—but, for the reasons described above, Ollnova's argument is belied by the patent claims themselves. E.Br., 41-44.

For the '371 patent, Ollnova argues that ecobee's analogy is inapt because a person would need a thermostat to carry out the alleged invention. Oll.Br., 28. Even

if so, thermostats are conventional and long pre-date the patent. Ollnova also mischaracterizes ecobee's analogy by arguing that it "ignores a litany of key elements," such as "communicating." Oll.Br., 28. ecobee addressed communicating, and Ollnova fails to identify any other "element" missing from ecobee's example. *See* E.Br., 40-41 ("the landlord may send [information] multiple times to ensure [management] are aware of the issue").

### B. The Asserted Claims Do Not Contain an Inventive Concept

Ollnova does not dispute, and the '371 and '887 patents confirm, that all recited components and their arrangement were well-known and conventional. This alone demonstrates that the claims lack an inventive concept at Step Two. *See Elec. Comm'n Techs., LLC v. Shopperschoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020) ("Because claim 11 … merely invokes well-understood, routine, conventional components and activity to apply the abstract idea … claim 11 fails at step two."); *Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information").

Ollnova instead argues that the claims are eligible because they are novel "advances over the prior art," and that the "prosecution history" of these pre-*Alice* patents allegedly confirms that certain features (like polling, selectively transmitting

and using change information) "were not present in the prior art." Oll.Br., 22-23, 29. But "[e]ligibility and novelty are separate inquiries," *Two-Way Media*, 874 F.3d at 1340, and "a claim for a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020) (finding claim ineligible despite alleged novelty, noting it is "maybe a new idea, but still an abstract one"). Ollnova's faulty logic implies that any claim which issues after a prior art rejection would be eligible. Further, the allegedly novel approach referenced by Ollnova (i.e., reducing the amount of information a sensor reports, Oll.Br. 23) does not utilize any unconventional component or arrangement, and thus fails to satisfy Step Two.

Lastly, Ollnova argues that "[a]t a minimum, there are factual disputes … that cannot be resolved on appeal and require remand." Oll.Br., 23, 29. But, Ollnova failed to identify any specific "factual disputes" for these patents in its District Court briefing, therefore such arguments are waived. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023) (declining to entertain "fact disputes" that were not "timely identified"). In any event, Ollnova still fails to identify any specific factual dispute that could demonstrate an inventive concept. This Court can and should find the '371 and '887 patents ineligible.

**IV. THE '371 PATENT ASSERTED CLAIMS REQUIRE REPEATEDLY COMMUNICATING A COV UPDATE, AND OLLNOVA FAILED TO SHOW THE ACCUSED PRODUCTS OPERATE AS CLAIMED**

**A. Ollnova Ignores the Claims' Plain Language**

When defending against invalidity, Ollnova states that the '371 patent is eligible because it "solves 'communication failures' by '*repeating communication attempts*.'" Oll.Br., 27. Then for infringement, Ollnova reverses course and argues that the claims do not require "*repeating* the communication of the *same* message," contending that they are satisfied by sending new information in each communication. *Id.*, 46-48 (emphasis in original). Ollnova cannot have it both ways on this point, as the communication failure to which Ollnova refers would not be solved by sending new information. The plain language demonstrates that, while a practicing device may communicate multiple COV updates, it must repeat at least one update, at regular intervals according to a schedule or until a change-of-value acknowledgment is received. *See* E.Br., 46-48.

Ollnova argues that ecobee's reading of the claim is not the "only reasonable one" (conceding that ecobee's reading is reasonable),[3] and proceeds to offer only an

---

[3] Ollnova cites *Kaufman v. Microsoft Corp.* to assert that ecobee must establish its understanding is "the '*only* … reasonable' one" (Oll.Br., 47). *Kaufman* addressed the "high bar required to conclude that the patent excludes the only embodiment described in the specification," which is not the case here. 34 F.4th 1360, 1372-73 (Fed. Cir. 2022). Regardless, ecobee's is the only reasonable understanding in light of this Court's precedent.

unreasonable contrary interpretation: that sending a first message once, and then sending a different message later, qualifies as "repeating." Oll.Br., 48. This interpretation is at odds with any plain understanding of the word "repeating," which under anyone's understanding requires doing something more than once.

Ollnova's position that the claims do not require transmitting the same message more than once violates binding principles set forth in *Varma* and *Salazar*, which in this case require that at least one of the "multiple" messages be repeated. E.Br., 50-52. Ollnova suggests in a footnote that those cases are "inapposite," but provides no further explanation. Oll.Br., 48 n.5. *Varma* and *Salazar* are directly on point and dictate that ecobee's understanding of the plain meaning is correct. E.Br., 50-52.

Ollnova repeats the District Court's incorrect conclusion that ecobee is advancing an untimely claim construction. Oll.Br., 46. But ecobee's argument is based entirely on the claim language's plain meaning, it is not seeking a claim construction. E.Br., 50. ecobee cited to the specification and prosecution history to demonstrate that the plain meaning is consistent with the intrinsic record, not to advance any specialized meaning. *Id.*, 47-48.

## B.    Ollnova Mischaracterizes the Record Evidence

Ollnova is wrong that it demonstrated infringement "even under ecobee's construction." Oll.Br., 46. Not so.  At most, Ollnova's expert opined that the general

type of messages (█████s and ████s) are sent at intervals, but the record is clear that each ████ and ████ contains different data. *See* E.Br., 48-50. Ollnova did not (and cannot) show that any single message sent from an ecobee thermostat is ever repeated, as the claim requires.

Ollnova also advances the new argument that because ecobee's servers send an ████████████ ("███") when they receive an ████ or ████, "the ***expected operation***" would be to repeat the message if no "████" is received. Oll.Br., 49. But there is no record evidence demonstrating that such an operation occurs.[4]

Ollnova asserts that Dr. Madisetti "disagreed" that the same message is never sent (Oll.Br., 49), but all he said was that he "believed" ecobee's engineer (Mr. Hietala) had testified that the products "send[] the message twice." Appx2018-19, 1122:9-1123:9. The record is clear, however, that Mr. Hietala never offered such testimony, and was firm that for both ████s and ████s, a "different message" is sent each time. Appx1273-1274, 617:13-618:10; Appx1282-83, 626:20-627:2. Dr. Madisetti appears to be relying on the portion of Mr. Hietala's testimony discussing a communication failure, where a particular ████ that a thermostat sent is not received by the ecobee server. Appx1276-1278, 620:25-622:12. But in such a

---

[4] Ollnova's comment that ecobee's system provides ████████████ messages after ████/████ messages misses the point. Oll.Br., 46. No single message is repeated "until" ████████████, which is what the claim's plain language requires. *See* Appx1277, 621:8-15.

scenario there is no repeating, because the next ██ the thermostat sends will include new information indicative of conditions since the previous, unreceived ██ was sent. Thus, that next ██, as Mr. Hietala explained, is a "very different message." Appx1278, 622:7-12. Dr. Madisetti's apparent misunderstanding of Mr. Hietala's testimony cannot form a basis to prove infringement.

## V.   THE DISTRICT COURT ERRED IN ADMITTING UNRELIABLE DAMAGES OPINIONS AND FINDING THEY PROVIDED SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S AWARD

### A.   Mr. Bergman's Equal Value Assumption Should Have Been Excluded and Was Insufficient to Support Damages

Ironically, Ollnova's attempt to justify Mr. Bergman's assumption that all patents in Ollnova's previously-licensed portfolio had equal value is based on an admission that the assumption is untrue. Ollnova offers no record evidence that all patents were equal in value, nor can it. Instead, Ollnova speculates that Mr. Bergman's analysis may be "conservative" because certain asserted patents were called out in the ██ agreement and, therefore, may have more value than others in the portfolio. Oll.Br., 52. This argument lacks record support and contradicts Mr. Bergman's assumption of equal value (which is all he offered at trial).

Notably, the asserted '495 patent indisputably was *not* called out in the ██ agreement. According to Ollnova's logic, the '495 patent would be less valuable than the other Asserted Patents. Yet, because of the opaque verdict form, the '495

23

patent may have been the only one the jury found infringed. Mr. Bergman made no attempt to ascertain the specific, lower, value of the '495 patent.

Ollnova relies on *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 855 (Fed. Cir. 2010). There, in response to plaintiff's expert survey (the likes of which no one conducted here), nineteen companies reported using the accused software in an infringing manner, leading plaintiff's expert to "conservative[ly]" assume that 942 non-responders did not infringe. Thus, the "conservative" assumption in *i4i* "had a sufficient nexus to the relevant market, the parties, and the alleged infringement." *Id.* Mr. Bergman's patent-counting assumption lacks any such nexus or factual predicate.

The other cases Ollnova cites highlight the deficiencies in Mr. Bergman's analysis. In *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030 (Fed. Cir. 2020), the license involved the same parties, patent, and accused products at issue in the subject litigation, causing defendant's expert to concede that the license was "a very close comparable, much closer than you ever find in a patent case." *Id.* at 1040-41. The Court credited Vectura's evidence regarding "the key component of the 2010 license," and its expert testimony that this technology was "very similar" to the invention covered by the patent-in-suit. *Id.* Ollnova, by contrast, introduced no evidence other than Mr. Bergman's *ipse dixit* regarding what drove the ███ license, nor did it provide evidence of any similarities between ███'s and

ecobee's products or the technical scope or value of the ██ patents in the █████

agreement that are not asserted in this case but were treated by Mr. Bergman as equal

in value to the Asserted Patents.

Similarly, in *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1371

(Fed. Cir. 2017), plaintiff relied not only on "what the AT&T Settlement Agreement

itself says about attributing amounts to particular patents," but also "***more reliably***,

[on] creditable expert evidence about how the other Agreement-covered patents

relate to AT&T's business operations." Ollnova offered no comparable evidence

here. Likewise, in *Bio-Rad Labs., Inc. v. 10X Genomics Inc*., 967 F.3d 1353, 1377

(Fed. Cir. 2020), plaintiff's damages expert "relied on the reports, testimony, and

conclusions of other witnesses to understand that the licenses were technologically

comparable, and that the proportion of licensed/unlicensed features was comparable

to the present case." Here, Mr. Bergman did not cite any evidence on the

technological comparability of the unasserted ██ patents in the █████ agreement.

Finally, *Apple Inc. v. Wi-LAN Inc*., 25 F.4th 960 (Fed. Cir. 2022) actually

supports ecobee. There, this Court found that "damages testimony should have been

excluded" because errors "in analyzing the comparable license agreements"

rendered the testimony "untethered to the facts of th[e] case." *Id.* at 972. Specifically,

the patentee's expert testified that the two asserted patents were the "key patents" in

allegedly comparable licenses because "they were specifically listed in the

comparable licenses" and "they were discussed in negotiations." *Id.* at 972. In rejecting that analysis, the Court emphasized that one of the patents was not identified as an "Asserted Patent" in the agreements—just like here, because the '495 patent was not "called out" in the ███ agreement. Moreover, Ollnova did not introduce evidence of patents being "discussed in negotiations," relying solely on Ollnova's call out in the ███ agreement itself. *Id.*

## B. Mr. Bergman's 1000x Market Share Multiplier Should Have Been Excluded and Did Not Provide Sufficient Evidence to Support Damages

Ollnova glosses over Mr. Bergman's admissions regarding the unreliability of his 1000-fold increase in applying the ███ agreement, which he derived from a single document reporting sales on Amazon. As Mr. Bergman conceded in deposition, he had no "evidence whatsoever to suggest that the relative amounts that the parties have on Amazon is consistent [with ███ 's and ecobee's relative sales on] any other sales channel." Appx4570-4574, 275:17-279:20. That testimony, which Ollnova substantively ignores, confirms a lack of reliability. Ollnova remarks that ecobee failed to elicit identical testimony at trial. However, Ollnova overlooks that ecobee is appealing the denial of its *Daubert* motion to exclude Mr. Bergman's market share opinions; trial testimony is not relevant to that aspect of this appeal. *See* E.Br., 57.

Mr. Bergman's testimony was inadmissible at least because ███ primarily

sells commercial-grade equipment through channels other than Amazon, whereas ecobee sells smart thermostats for the home and makes considerable sales through Amazon. *See* Appx946-948, 538:2-540:7. So, comparing "flaw[ed]" Amazon market share data did not reliably adjust the value of the ███ agreement to account for differences in ecobee's and ███'s sales (i.e., ███ HVAC sales, made primarily through other channels, were disregarded). Appx4570-4574, 275:17-279:20.

Ollnova incorrectly asserts—without citing evidence of negotiations—that negotiations for the ███ agreement were "limited to smart thermostats." Oll.Br., 56 (citation omitted). Even if Ollnova were correct, the license indisputably was not limited to those products (Appx1249, 593:22-25) and the patents that Ollnova licensed to ███ undisputedly relate to HVAC equipment (*see* Appx156, 1:10-15; Appx160, 9:34-51).

Ollnova again misplaces reliance on *i4i*, which assumed that all omitted data (non-responders) did not infringe, cutting against patentee's interest and decreasing damages. Here, Mr. Bergman used the lack of evidence concerning ███'s non-Amazon sales to justify a 1000-fold *increase* in ecobee's sales, cutting in favor of patentee. That is the opposite of how *i4i* addressed omitted data.

### C. Dr. Madisetti's Testimony on Marking Should Have Been Excluded and Did Not Provide Sufficient Evidence to Support Damages

Ollnova rehashes the District Court's belief that Dr. Madisetti's conclusory marking testimony was reliable and sufficient because APOGEE is a "system." Oll.Br., 57. But, a patentee's *Arctic Cat* burden is not excused or lowered where systems are involved. Such an exception would be particularly inappropriate here, where the Asserted Patents describe APOGEE as an embodiment and explicitly state that APOGEE can practice the claims. E.Br., 62; *e.g.*, Appx144, 3:50-52 ("In an embodiment, the building automation system may be an APOGEE$^{TM}$ system …."). Ollnova's argument that ecobee had to call out a "specific component or combination of APOGEE components" (Oll.Br., 57) contradicts *Arctic Cat*'s "low bar" for identifying an unmarked product, as well Dr. Madisetti's testimony that the "documents were sufficient" to analyze whether APOGEE infringed the Asserted Claims. Appx763, 355:14.

Despite admittedly having sufficient documentation, Dr. Madisetti opined only "that these components and their combinations do not practice the asserted claims," without any supporting analysis. Appx764, 356:6-7. That Dr. Madisetti recited certain claim limitations does not salvage his opinion, as he merely professed a lack of "aware[ness]" that APOGEE met those limitations, without analyzing any APOGEE feature or affirmatively concluding that APOGEE failed to satisfy a

particular limitation. Appx771, 363:22-25. This absence of awareness cannot discharge Ollnova's burden.

Ollnova identifies no authority finding conclusory testimony sufficient under *Arctic Cat.* To the contrary, Dr. Madisetti's conclusory assertions track the insufficient testimony in *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299, 1313-14 (Fed. Cir. 2020), where patentee's witness stated that the unmarked product "did not embody [the] invention," without "match[ing] the limitations in any claim … to the features of the" product. Ollnova tries to distinguish *Packet Intelligence* because the witness there addressed the incorrect product. But, the Court was clear that "[e]ven if [the witness] had testified about the correct product," his "conclusory testimony" would have failed to carry patentee's burden. *Id.*

Ollnova does not contend that it provided sufficient evidence to support damages based on pre-Complaint sales, so its marking failures require a new trial. Given the inadequacies of the verdict form (*infra*, Section VI), a new trial is required because the Court cannot know which patent was found infringed and, therefore, cannot determine by what amount the award should be reduced.

## VI. THE DISTRICT COURT ERRONEOUSLY MERGED MULTIPLE INFRINGEMENT QUESTIONS INTO A SINGLE INFRINGEMENT QUESTION ON THE VERDICT FORM

Ollnova does not dispute that ecobee asserted four distinct counterclaims, seeking declarations of non-infringement of each Asserted Patent. Nor does Ollnova

deny that the jury failed to render a decision on each counterclaim. Indeed, Ollnova's brief does not even mention ecobee's counterclaims. Thus, the verdict form's single infringement question, which grouped all four patents' claims together, requires a new trial because it undisputedly deprived ecobee of a decision on each counterclaim.

Ollnova speculates that infringement of a single claim might have supported the entire damages award. Ollnova is wrong for the reasons discussed above in Section V. But even if Ollnova were right, it would underscore the verdict form's flaws. Ollnova posits that the jury decided the '495, '371 and '887 patents were each infringed. *See* Oll.Br., 1 ("The jury agreed with Ollnova that ecobee infringed three of the Asserted [P]atents[.]"). So has the District Court, finding that the record would have supported "a maximum royalty of $35.67 million" based on assumed infringement of all three surviving patents. E.Br., 68 (quoting Appx47). But that assumption is not supported by jury's response to the single infringement question.

Ollnova concedes that the cases cited by the District Court to justify its verdict form (*R.R. Dynamics*, *i4i*, and *Hoechst*) are "inapposite." Oll.Br., 59; *see* Appx70-74 (relying on those cases). Ollnova's remaining authority lends no support to the improper verdict form. The verdict form in *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 709 (Fed. Cir. 1984) contained "specific questions" for each asserted patent. Ollnova also cites (without explanation) *Network-1 Techs., Inc.*

*v. Hewlett-Packard Co.*, 981 F.3d 1015 (Fed. Cir. 2020). While the Court there stated that "the jury found that HP did not infringe any asserted claim" (*id.* at 1021), the verdict form contained a separate question for each claim. Appx8605-8609. And Ollnova relies on *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360 (Fed. Cir. 2010), which involved a single asserted claim. Tellingly, every case cited by Ollnova involving multiple patents used separate infringement questions for each patent (or claim), in accordance with the basic requirement that a general verdict announce the result of each cause of action.

Finally, ecobee addressed Ollnova's mistaken unanimity waiver argument in its opening brief. *See* E.Br., 14-15, 67, n.19.

## CONCLUSION

For the reasons stated above, this Court should reverse or vacate the final judgment, and find the '495, '371 and '887 patents ineligible, and that Ollnova failed to demonstrate infringement of the '371 patent.

Date: May 5, 2025
Respectfully submitted,

**VENABLE LLP**

/s/ Manny J. Caixeiro

Manny J. Caixeiro

*Counsel for Defendant/Appellee/Cross-Appellant ecobee Technologies ULC*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 5th day of May, 2025, I caused this Brief to be filed electronically with the Clerk of the Court using the CM/ECF System, and caused copies of the Confidential version of this Brief to be served via e-mail on the following counsel of record for Plaintiff-Appellant Ollnova Technologies Ltd.:

Brett Cooper
BC LAW GROUP, P.C.
200 Madison Avenue, 24th Floor
New York, NY 10016
Telephone: (516) 359-9668
bcooper@bclgpc.com

Robert Auchter
Auchter PLLC
1629 K Street, NW
Suite 300
Washington, DC 20006
Telephone: (703) 585-5721
robert@auchterlaw.com

*Counsel for Plaintiff-Appellant Ollnova Technologies Ltd.*

/s/ Manny J. Caixeiro
Manny J. Caixeiro

*Counsel for Defendant/Appellee/Cross-Appellant ecobee Technologies ULC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Circuit Rules 28.1(b)(3) and 32(b)(1), because this brief contains 6,985 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: <u>May 5, 2025</u>        <u>/s/ Manny J. Caixeiro</u>

Manny J. Caixeiro

*Counsel for Defendant/Appellee/Cross-Appellant ecobee Technologies ULC*